Good morning, Counsel. Good morning, Your Honor. My name is Tom Vogel. I represent the plaintiff and appellate Lezlie Gunn. I'd like to reserve three minutes for rebuttal. All right. Let me preface my remarks by saying that I filed a Rule 28F letter this morning. I apologize for the tardiness of it. My family had some health issues last week and I was unable to get to it before Friday. I think it's F28J you mean? 28J. Yes, I'm sorry. I'm sorry. And so I spoke to counsel this morning and as well. I'd like to first address the question that the court posed whether the Notice of Appeal was timely filed. As this court noted in Vernon v. Heckler, which was 811, this is one of the cases that we put in the 28J motion, 28J letter, the filing of a timely Notice of Appeal is, quote, mandatory in jurisdiction. The period for filing a Notice of Appeal runs from the entry of the judgment and that's in Rule 58. Well, that's what we told you, so. The follow-up question is how did everybody below, the judge and both sides, miss that? I can't explain that, Your Honor. My partner's an appellate specialist. I'm surprised he missed it, but we appreciate the court's lifeline. Nonetheless, the case Calhoun v. United States, which is 647 F2nd 6 at page 8, made clear that a judgment or order is not entered within the meaning of Rule 4A unless it strictly complies with Rule 58 and 79 of the Federal Rules of Self-Appreciation. Yep, we know that. I know, okay. This case here involves a 13-page order granting a motion to strike under the Anti-SLAPP Rule. The order itself is much more like a statement of decision. It contains recitation of facts in the complaint, recitation of opposing facts from the defendant, citation of the case law, legal discussion. It is definitely not a judgment or order, does it say, the case is dismissed. A judgment is actually entered in this case, so we know there's an order and we know there's a judgment. Right, so the fact of the matter is is that we focused on Rule 4 in terms of the motion to extend time in our brief. I think the reality is is that it's very clear that the judgment, which was entered on May 1st, is the document from which the time to appeal, the notice to appeal, must be filed. The notice of appeal was filed May 28th, 27 days within the rule, the 30-day rule, and therefore we believe the motion or the notice of appeal was clearly timely. Any chance you've waived the Rule 58 deficiency by not raising it to the court below in the motion to extend or in your briefs here? I think that's a question for the court to decide. I don't know that we've waived it. Well, give me the argument why it isn't. Well, I think, again, the court said it's jurisdictional. The compliance with Rule 58 is jurisdictional. I think as such it's never waived. I think anything jurisdictional, whether it's diversity jurisdiction or the like, is not waived. The purpose, obviously, of the separate document rule or separate judgment rule is to trigger the time to file a notice of appeal. So that there's certainty as to when it's... There's certainty, exactly. And I think that in this case, clearly 27 days falls within the 30-day requirement. There's a case called Paddock v. Morris, which is a Ninth Circuit case in 1986, 783 F. 2nd, 844, where the trial court entered a seven-page order. It discussed facts, law, discussions, and whatnot. And then there was a motion, there was a notice of appeal filed, which was deemed to be untimely. This court said, no, the fact that the order had all of this extraneous information, it doesn't just say the case is dismissed or whatever, it didn't constitute an order under Rule 58. The other thing is that the exceptions to the rule are not here. We argue that this anti-SLAPP was akin to a 12b6 motion, a motion to dismiss for failure to state the facts. But you had discovery, right? Pardon? There was discovery in this case. No, there wasn't, Your Honor. No, I thought there was. No, the discovery was not. What happened was is that the defendant and movement submitted hundreds of pages of evidence in support of her position that she was the attorney and also on prong two. But as the defense of the order itself, the court agreed with us that she was not the attorney at the applicable time. Well, I think what the court did is said there was a triable issue of fact. I don't think the court agreed with you. Well, I think the, in fact, if I could, let me get my glasses so I don't misquote the judge. I believe the court said that there was a, he found that she wasn't the attorney. However, that her communication with Mr. Wilde after August of 2016 or October of preparatory to finding litigation. The problem is that that's not what the complaint alleged. The complaint alleged breaches in January, March, and June of 2016, well before the time that the court found that this communication that. Okay, so counsel, what evidence, so January, March, June. Correct. What evidence did you present in the record to show that there was any contact at all between Mr. Wilde and is it Drake? Drake. And Ms. Drake before June of 2016? Well, I believe, your honor, that the defendants opposition or the defendants motion was the first time that we had heard that she was not, that she was the attorney from 2011 until 2016. However, that was contradicted by the declarations that she filed in the other federal case. We had a communication with opposing counsel where we asked for him, asked for information about this allegation of being the attorney of record for Mr. Wilde. We were promised some evidence on that. Instead, we got the motion to strike. That in itself is not the issue. The issue really is we didn't have discovery on this period. You didn't get discovery, but my question is, is there any evidence whether you're entitled to discovery or entitled to a remand? Different question, but is there any evidence at all in the record that would establish that there was any contact between Mr. Wilde and Ms. Drake prior? Well, the complaint alleges... I understand what the complaint is very nonspecific about when their contact was, but my question is, is there any evidence that, any admissible evidence in the record? No, your honor, but I don't think that's the issue. The issue is the complaint has, the allegations of the complaint have to be taken as true in this motion. Why do the allegations in the complaint have to be taken as true when both sides put in evidence? I mean, no matter how fantastic, illogical, or outlandish the allegations are, the court has to take them as true? No, the plaintiff did not put in evidence about the communication between Ms. Drake and Mr. Wilde in this pre-protected time frame, but her complaint set forth the allegations that there was a breach in January, March, and June, which was caused by misdraged interference. Isn't your better argument that the absence of discovery means the court should have applied a 12B6 standard instead of a Rule 56 standard? Well, I think if you look at the motion itself, you're correct, your honor. This was a 12B6 motion because it said, as a matter of law, the complaint must be dismissed. Summary judgment also dismisses as a matter of law. Pardon? Summary judgment also results in a issue of Ms. Drake's status as an attorney for Mr. Wilde and the litigation privilege. If I may quote just briefly from it, it says that in the motion itself, it says all allegations in the complaint relate to Drake's role as legal counsel for Dr. Wilde and her communications with Dr. Wilde after he had initiated proceedings against Gunn in Switzerland. So she couched this basically as a 12B6 without calling it a 12B6. Anti-SLAPP motions can be treated as a 12B6 or in certain circumstances as a Rule 56, but we were not provided the opportunity to do any discovery on this January through August time frame. So that's one issue, but you did put in declarations and other evidence, including declarations of your client that purported to establish, the district court found it was based on hearsay, but that purported to establish that there was contact prior to the fall between Ms. Drake and Dr. Wilde, right? Yes, Your Honor. I think the other thing is that the grovelment of the motion or the thesis of the motion was that we had this litigation privilege under California Civil Code Section 47, therefore anything that Ms. Wilde or Ms. Drake did was protected. That was modified by the court when it said there's a tribal issue of fact whether she was the attorney. Well, but the court found that the protected activity or the protected conduct didn't start until August of 2016 when Ms. Gunn allegedly threatened to sue Dr. Wilde or October 15, 2016 when Ms. Drake alleged that she became his attorney. The fact of the matter is that on that basis, prong one was not satisfied. The California Rules of Court 3.1322 requires that a special motion to strike outline the paragraphs of the allegations. Right, but we don't have that in federal procedure, so what we're talking about is how to fit a square peg into a round hole. And we found nothing in either California or in the federal rule or when the defendant attacked only the conduct after August of 2016, she could have still won her anti-slap motion and still been awarded fees. The problem is that she took an all for nothing approach. She said dismiss the entire complaint, all the allegations from January through forever because this was all preparatory to litigation. Let me ask you this. When the defendant put in all this evidence, self-serving evidence, we'll call it, on the motion, did you come back and say, excuse me, Judge, you have to evaluate this under 12b-6. You can't consider any of the evidence they put in. No, we did not, Your Honor, but the evidence that they put in related to prong one. It related to the allegations of the attorney-client relationship, but also the dispute between Mr. Wilde and Ms. Gunn, which is irrelevant to the ruling on the motion. The fact of the matter is that the dispute between Ms. Gunn and Mr. Wilde was settled by the Swiss court in 2020 in Ms. Gunn's favor. So ultimately that's where we got it, but the fact of the matter is if you don't satisfy prong one completely, it's like the old adage, if you shoot for the king, you better kill him because if you leave anything in the complaint, then you don't satisfy prong one if you go with this blunderbuss approach of if there was protection from October 2016, there really wasn't for any communications they had before? Yes, we did, Your Honor, and the court lumped all of that conduct together and determined that the communication must have been privileged or must have been protected under the antitrust. From August. Right, but the problem is that in ruling it, he disregarded the January through August unprotected conduct and just sort of glossed over it and said, I'm going to. And so your view is that if you had been able to get discovery, you might have been able to show that there was contact in January and March? Absolutely, Your Honor, we would have been able to ask for travel records of Mr. Wilde and Ms. Grange, and we would have been able to communicate with the pilot and get him under oath. So help me with something I just don't remember. There was something where I think it was in the record or the judge said Dr. Wilde was unavailable as a witness. Dr. Wilde was unavailable as a witness because he lives in Switzerland. But what was he unavailable for? If there was no discovery, what did that mean that he was unavailable? What context did it come up where the judge made a finding that he was unavailable? I don't know, Your Honor, and specifically in the order there was other litigation involving Dr. Wilde before Judge Mahan, which he may have been referring to. I'm not familiar with what the judge was meaning there. If I may, so as I said, because the pre-protected conduct period was not dismissed or shouldn't have been dismissed by the allegations of the movement, then the prong one was not satisfied or should not have been satisfied. And if you don't satisfy prong one, you don't go to the burden shifting under prong two. Burrell v. Schnitt, which was a case out of the California Supreme Court, talks about the fact that if you want to dismiss all of the complaints, you've got to get all of the complaints. If you want to dismiss parts of the complaint, you can get that. And as I said, had the motion been focused solely on August of 2016 forward, then she still could have won her anti-slap. She still could have gotten fees. However, that's not what was done. In this case, it was the all or nothing. With the time I have left, let me just briefly address the attorney's fees issue. We briefed it, I think, fairly substantially. The case cited by the appellees, the Boca Park Marketplace case, I think it reaffirms our position in our district. It was just a brief reference, wasn't there, to California rates as opposed to local rates? Well, except in Barjahn v. Dalton, which is a case out of the 9th Circuit, 132 F. 3rd 496 at 500, it specifically says that the rates prevailing in the district, in this case the district of Nevada, control not where the attorneys are. I agree with you, but if you read the and then there was kind of a citation to California law thrown in, right? Right, and the Boca court found that the rates were undisputedly at the top end of the range, but I think one of the takeaways from that case, along with Barjahn, is that it's Nevada rates that control not California rates. Judge Mahan did believe that it was the California rates that controlled, and therefore he entered the order. The other problem we've got is that the number of hours that were devoted to the anti-SLAPP motion and reply was 304. Two of the four attorneys that worked on this case indicated they had 118 years of total experience between the four. Two of them had significant anti-SLAPP experience, which was noted in their brief. In the case we cited, it's Banerjee versus Continental Inc. It's a Continental Inc. The judge in that case in the district of Nevada said that, quote, the partners are experienced with anti-SLAPP motions. It should not have taken 60 hours to prepare a 24-page anti-SLAPP motion, and in so doing, reduce the partner time to 20 hours. Every case is different, right? This was a very complicated case. I would disagree, Your Honor. I think this is a very straightforward case. This was a case about Ms. Graves setting forth the parameters, saying, I was the attorney, therefore everything I do is protected. There's nothing unusual about that. She threw a lot of other stuff into it, a lot of salacious information that I don't know what the court took of it, but the fact of the matter is, she said, I was the attorney, therefore I'm protected. The complaint must fail as a matter of law. Now, here we have 26-page motion, 12-page reply, 2 pages more than Banerjee, but instead of a total of 35 hours awarded by the court, it was 304 hours awarded. So what do you think was the maximum reasonable amount of hours that would have been within the district court's discretion here? Well, I may be 70 next year, Your Honor, but I've only practiced law for 15. And when I went to work for a firm in Orange County, I was taught by the senior partner, you write a brief, you write a one-hour per page, unless it's complicated, in which case it's two hours. Here was eight hours per page. 26.4 hours were spent analyzing the evidence. The other 276 was unexplained. But Counsel, Judge Mahan looked at all of this and made a decision, and we're supposed to give deference to that unless it's established that he abused his discretion. How do we get to second-guess his determination? Well, two issues. First, if you agree with me that prong one was not satisfied, the attorney's fees become moot because the ward should be vacated. However, the court didn't explain anything about how he arrived at these numbers. He just accepted the 304 hours. He mentioned the 27.6 hours devoted to investigation, but the other, he made no comment on it. He made no comment about our objections to multiple attorneys meeting discussing the same issue. There were significant instances of block billing. None of that was addressed in the ruling on the attorney's fees order. And so we think that the court, by not exercising his discretion, he abused his discretion. And so you would ask us to go back to the attorney's fees and do the work, or would you ask us to remand it for him to explain further how he came to his decision? First, we would respectfully request that you reverse the court's decision. Well, I understand that, but we're on the attorney's fees. I think it should be remanded to the judge to make a determination after reviewing the arguments and explain how he came to this conclusion that 304 hours for this process was reasonable. I think it should have been allowed to conduct discovery on this communication from January to August of 2016. She was not. As a result, this really was a, you know, despite what the defendant did in terms of larding the record with exhibits and evidence, I still believe that this was a 12B6 motion because it was focused strictly on this one issue of the protected conduct of the attorney. Counsel, somebody might have asked you this before, and I apologize, and I know you're almost at the end of your time. Was there any discovery that you propounded or anything you said to the district court? We want to take somebody's deposition. We want to propound interrogatories, anything like that. Was there any discovery that you actually attempted? I did not handle the case at trial. I will tell you this, though. I think that we did ask the court for discovery. I believe the court declined it. There was no discovery propounded per se because the process was very abbreviated. So I think the, you know, just to sum up, since I'm almost out of time, we would respectfully request that you reverse the court's judgment on the anti-SLAPP. Failing that, we would ask that the attorney's fees award be remanded for reconsideration by the trial court in light of the questions that we posed in our opposition, which were quite plainly just not addressed in the judge's ruling. And because we think that it's important that this not become a case like we've seen recently, I've experienced recently with the ADEA or the ADA or the PACA, or PACA claims where there's this private attorney general. These are all great laws, but sometimes they're abuses. I think in the anti-SLAPP context, what happens is that there's this immediate rush to file an anti-SLAPP. I think too often judges look at it and say, gets rid of a hard case, clears my docket. And I think in this case, there was not enough analysis done to the January through August time frame. The judge completely ignored it, both in terms of his order and also in the judgment. Thank you. All right. Thank you, counsel. You've exceeded your time. We'll give you a minute or two for rebuttal. Been there. Your Honor, please, Carton Lander on behalf of the appellee, Chris Brage. So let me start with a couple of things and correct the record, which respectfully I think was not stated to the panel. But could we start with the judgment issue, whether or not this appeal was timely? Sure. So starting with that, the question posed by the panel last week posited that the timeliness were to run from May 1st, 2020, the date the judgment was entered, versus April 10th. Would a May 28th, 2020 notice appeal be timely? Obviously, if you assume as a prerequisite or a predicate, the timeliness starts on May 1st. Math was not my bag, but 28 is less than 30, and it would be timely. Why wouldn't we start from the date of the judgment? In this case, Justice Kogan, it was really the question you posed. It's judge. Not yet, anyway. I'm presupposing your elevation. I will tell you, there's tags. I borrowed this robe, and there's tags in the robe saying it was worn by Justice Scalia and Justice Alito. I feel very smart today. That's right. I've already elevated you. Congratulations. So it requires a three-part analysis, one of which, Judge Kogan, you posed, which I think is really the critical question, that is waiver. We know from Casey and bankers that you can waive the Rule 58 separate document requirement. What case are you saying stands for the proposition that the Rule 58 separate document requirement can be waived? I will read directly from Bankers Trust. Give me the citation, and I can read it for myself. It's 435 U.S. 381. Jump site is 382. The Supreme Court citation is 98, Supreme Court 1117. This is a direct quote. Did you cite that in the 28J letter to us? I believe we did, yes. But here's what it says. And actually, I don't know if we did, because this issue came up after we submitted the 28J. But that's what a 28J is. But the issue from the panel, which was not raised below, which was the timeliness of appeal and the jurisdictional implications. Right. But we always examine our jurisdiction. Absolutely correct. Absolutely correct, Your Honor. No question about that. This is what Bankers Trust says. We hold today that when the parties treat a fully dispositive summary judgment order as if it were a final judgment, the requirement of Federal Rule of Civil Procedure 58 that the judgment, quote, be set forth in a separate document can be waived. Well, that's a different issue. That's the reverse of what you've got, isn't it? Exactly. Well, I don't think so. I mean, if the parties act and the court acts as though the operative deadline began on April 10th, Casey also, I think, which we had... But the counsel, in this case, a separate judgment was actually entered. It was indeed. So there was no waiver of the requirement for a separate judgment to be entered. That's not where we are. A separate judgment was actually entered. So at that point, we measured the time to appeal from the separate judgment, because the rule has been complied with. If the conclusion of the court is that the April 10th order cannot be a separate document under Rule 58, then the appeal is timely. There's no question about that. Well, the record in this case is that apparently the district court did not consider that to be the final judgment, because a final judgment was actually entered. Correct. But the point of this is, and the notion that you would cite language that said Rule 58 can be waived, you said the entry of a separate document can be waived. But that's irrelevant to what we have here, because a separate document was issued. If no separate document were issued, then we'd be in a different jurisdictional framework. But that's not what we have. That case doesn't help you, in other words. I understand that the proposition, Judge Rawlinson, that if you conclude that the submission of the judgment, the entry of the judgment, necessarily creates a separate document. How can we conclude otherwise? Because the parties conducted themselves, more specifically the appellant conducted herself as though April 10th was the operative deadline. So, counsel, what you're saying is that this subsequent document was, in fact, a nullity. The judgment somehow became a nullity because the case had ended, because there was no appeal from what had already become a final judgment? What I'm saying is that the appellant and, frankly, the lower court believed, apparently, that the triggering date for purposes of the timeliness of the appeal was April 10th, 2020. And, indeed, the motion, the Rule 4 motion, which was denied, operated entirely on that premise, and it was denied long after the judgment had been entered. So, the fact of the matter is, if the parties, I understand, Judge Rawlinson, your position, which is once the second document is entered, what difference does it make? The court can believe what it wants to believe if, under the standards that govern Rule 58, the separate document creates the separate whether there be a waiver of the timeliness issue. In other words, the appellant will have conducted herself on the basis that her timeliness for purposes of filing a notice of appeal was not started, or the time didn't start to run on May 1st, it began to run on April 10th. But the problem with this argument is that it reintroduces the uncertainty into the filing time that Rule 58 was designed to eliminate. I understand that entirely, Judge Rawlinson. I understand why the panel raised this issue specifically, because it was not raised below. And, in fairness, I think the substance of this appeal really needs to be dealt with on the anti-SLAPP. You've raised an issue. I understand your position. There is authority. We cited Casey. You disagree with my interpretation of Bangor. I think there is an issue in Bangor that stands for the proposition that Rule 58 can be waived, or at least a separate document requirement. But I don't want to get... If the conclusion is what you have articulated, Judge Rawlinson, and that is the entry of the judgment necessarily takes us out of the realm of potential waiver because the second document was in fact created and entered, then the appeal will be timely. So I don't want to spend... There are substantive issues I want to address, and I don't want to get hung up too much on the timeliness issue. Why don't you go ahead. Okay. So the issue that the counselors and the couple need to be addressed specifically. One is, this was not a Rule 12-style anti-SLAPP motion. Section 425.16 clearly allows for two different styles of challenge. You can file a legal challenge, which would be the equivalent of a Rule 12, or you can file a factual challenge. So counsel, were they entitled to discovery? They were entitled to discovery. Did they ask for discovery? They did not. And indeed, this lawsuit was filed in the California District Court on September 6, 2019. We had a Rule 26 conference, which would have lifted the discovery hold. I believe it was in October. A Rule 26 report was submitted to Judge Carter. In that Rule 26 report, the plaintiff indicated a desire to take Dr. Wild's deposition. No discovery was initiated. We initiated discovery. We served requests for production. The plaintiff did not initiate discovery, did nothing. And indeed, the difference between the federal courts handling an anti-SLAPP in California, I think, is important here. Because the fact of the matter is, if this were in the California Superior Court, the Los Angeles Superior Court, or the Orange County Superior Court, then the filing of an anti-SLAPP does, in fact, stay discovery. So your view here is that whatever they would have been entitled to, they treated this like it was Rule 56, they looked at your evidence, and they submitted their own evidence, and the evidence before the court established no tribal issue of fact on whether there was any contact before August of 2016? Exactly right. So just sticking with discovery for a moment, my recollection is, late in the process, before the motion was ruled upon, there was a subpoena issued to Wild and Gray, the law firm that my client was a co-founder of. No other discovery was taken. I don't believe, under the standards that govern anti-SLAPP motions in the federal court, they were even prohibited from taking discovery during the entire pendency of this motion. Right. So you see what happened. They were thinking about the state procedure and figuring, oh, there's an anti-SLAPP motion, we can't do anything, and so they didn't do anything. And you're saying, that procedure, that's procedural, that doesn't apply in federal court. That's their problem, Judge Cook. It's not my client's problem, who spent hundreds of thousands of dollars defending this case. Counsel, would you agree that your client's first affidavit or declaration where she said that her first contact with Dr. Wild was in August of 2016 establishes a tribal issue for August through October? I do not. Why not? Because there's a declaration in the record, right? There is. And it says, I had no contact with Dr. Wild whatsoever in 2015. I had no contact with Dr. Wild in 2016 until approximately August of 2016, when he had advised me that he had permanently separated from his girlfriend, Ms. Gunn. Why isn't that admissible? Two reasons. One, the modifier approximately is important, because the declaration that Ms. Drache submitted in support of the anti-SLAPP motion addressed that specific issue. Well, she addressed it, but aren't we required to take all inferences in the light most favorable to the non-moving party? Right. So let's consider that. Let's take your presupposition. So, okay, let's assume there's a tribal issue August to October. Does it matter? Well, I think you're presupposing something that the record doesn't support, which is there's a tribal issue. Right. In order to have a tribal issue, you don't just need one witness saying something, you need another witness or something other than contradicting it, and nothing contradicts that. But it's your client that says it. It's not just a witness. It's an admission by a party. So let's just assume arguendo it's an admission, which I don't necessarily agree with, given the declaration that was later filed, which made clear that earlier declaration was an approximation. At this point, she'd gone through the records and actually discovered the email exchange in October of 2016, which was the first contact, but set that issue aside. The fact of the matter is, under the anti-SLAPP regime, the plaintiff is the master of the complaint she chooses to file. And one thing that counsel mentioned that I vehemently disagree with and is not reflected in the record is that this complaint does not allege conduct, specifically, at any time, frankly, on any date. It is a complaint which alleges an interference, but very importantly, although there's no dates of the alleged interference in the complaint, the plaintiff did choose to frame this issue in a particular way. Specifically, and it's Volume 8, Excerpts of the Record, pages 1270 to 1271. She framed the acts of interference as follows. The misdredge, my client, became aware of the RSA, this settlement agreement between Dr. Weil and the plaintiff, as a result of my client's relationship with Dr. Weil, and thereafter induced the breach of it. She chose to frame it in that way. She provided no dates on which this allegation occurred. And it was within her power, had she chosen to do so, to allege protected activity and unprotected activity. She just generally alleged an interference, no dates. Our client is the master of the manner in which she chooses to challenge that complaint. We challenged on a factual basis, very clear. Judge Mann found that it was a factual challenge. So in the Federal, excuse me, the Ninth Circuit, we're now in this realm of Rule 56, not Rule 12. Did you cite Rule 56 in your moving papers? I don't think we did, because I don't think we need to, Judge Kogan. We are entitled under 425.16, the California Anti-SLAPP statute, to treat this as a factual challenge. When we submit evidence in support of our motion, that is a factual challenge. It's almost a reflexive issue. If we had simply challenged the legal sufficiency of the pleading, that the allegations as taken as true, then in the Federal court's handling, or the manner in which it deals with and disposes of anti-SLAPP, we might be in the realm of Rule 12. We submitted evidence. The plaintiff submitted counter-evidence. That evidence was of no real moment. It was an inadmissible declaration from Ms. Dunn that really provided no evidence whatsoever to demonstrate that the showing that we made on Prong One, and counsel says we didn't meet our standard on Prong One, not true. Judge Mayhem was correct. The fact of the matter is we don't have to establish an attorney-client relationship for purposes of protection under Prong One. That is not the standard under California law. We need only to establish that the communication was in furtherance of a discussion that really relates to petitioning activity, which is the contemplation of litigation. We know from the record, and it's very clear, that in October 2016, which is where the evidence reflects that the first time there was a renewal of contact between Ms. Drage and Dr. Wild, that not only was there an active contemplation of litigation between Dr. Wild and Ms. Dunn on the subject matter of the RSA, but indeed Dr. Wild had already initiated a proceeding in Switzerland for purposes of ultimately having that document deemed rescinded. Additionally, there is evidence in the record, and we've cited to it. So it's kind of like an attorney-client privilege issue. That is, matters in contemplation of the retention of the attorney are also protected. Sometimes. My client could have been Judge Kogan, not a lawyer, and would still be protected. The fact of the matter is, respectfully to Judge Mayhem, we think he was incorrect in not finding specifically that there was an attorney-client relationship. We submitted Ms. Drage's declaration. We submitted evidence from depositions and other evidence that was in the record from the case in matter because Ms. Dunn had sought records from my client in the case in matter, which is the other Nevada litigation between Dr. Wild and Ms. Dunn. And in the course of doing so, Judge Mayhem, in addition to sanctioning the plaintiff $10,000 for improperly seeking privileged communication, essentially found that there was an attorney-client relationship between Dr. Wild and Ms. Drage. Our view of it is, and I sort of analogize almost to a motion to withdraw, my client's a lawyer. She has a client. In moving for anti-SLAPP, she chose, and I think she was correct in doing so, in being somewhat circumspect in how fulsome she was going to be on this issue, other than to say that it was very clear there was an attorney-client relationship. Because among other things, there really was not much dispute about that fact. There had been this collateral litigation in Nevada in the case in matter. The subpoena that Ms. Dunn had served on Wild and Drage had been quashed on the basis that the communications were privileged. Ms. Dunn had otherwise made remarks that are in the record that my client was a lawyer for Dr. Wild. So there wasn't really much question. We were very surprised as a result to see a declaration from Ms. Wild, who was a co-founder of Wild and Drage, my client's law firm and former partner at the time, that sort of, how can I put it, in some abstract sense, claimed I was a partner in this law firm. I don't remember this individual becoming a client. That's meaningless as an evidentiary matter. And in addition, it was, in our view, a breach of Ms. Wild's fiduciary duties not to act in derogation of former clients. Okay, put that all aside. This whole case comes down to whether you are characterizing the anti-SLAPP motion correctly as under Rule 56. If you are, then they could have asked for discovery to put it off. They could have raised a factual issue by saying, you know, she says this, but I think that. They could have done all those things and they didn't. But if you're wrong, if it's a 12B6 context, which I think they clearly thought it was, whether they were right or not, then all the evidence wouldn't come in and couldn't be considered. Well, right, but that's the problem, Judge Kogan. I mean, if you start from the proposition this could be a Rule 12 motion or a Rule 56 motion, once evidence is considered, once they submit evidence, whatever the merit or weight of that evidence, and we thought there was no merit and no weight to it, you cannot be in the realm of Rule 12 because you've got to go way beyond the parameters of 12B6 and what the court can properly consider. And under California's anti-SLAPP statute, that choice is solely up to the movement. Correct. We control the manner in which we choose to challenge it. We challenge it on the basis of facts. And the reason we did that was because this complaint, frankly, spoke to an issue that is of concern to the California courts and the California legislature, which is creative omission of relevant facts to extricate a complaint that might otherwise be subject to anti-SLAPP and thus render it sort of bulletproof. That is the import of this complaint. And so we, in our position of determining how we choose to challenge this complaint, challenged it on factual grounds. Why? Because that was the feasible way to do it, because there was this huge factual omission in the complaint. And we submitted evidence that demonstrated, without ambiguity, that the renewal of contact between Dr. Weil and my client occurred in October of 2016. It was in connection with his intent to retain my client to, among other things, but most specifically to obtain legal advice potentially related to this RSA and litigation that was clearly contemplated, had been threatened by Ms. Gunn, and was shortly thereafter filed by Ms. Gunn. So in that construct, we are clearly in the realm of Rule 56. We can't be in the realm of Rule 12 once the evidence is considered which it was here. The plaintiff now, and I want to make this point because I only have a minute left, she's completely reframed the issue. The challenge below on Prong 1 was there was no formal attorney-client relationship, which is not necessary for purposes of Prong 1, and really, frankly, speaks to Prong 2, because the notion of an affirmative defense on the basis of litigation privilege is really a defense as Prong 2, not Prong 1, where we simply have to meet the prima facie standard of showing protected conduct, which we did. Now the position is, oh, gee whiz, we lost, and I really would like to keep suing this person, so let's just pretend none of that happened. And even though in opposition, the plaintiff, having had the opportunity to take discovery, because we're clearly in the realm of Rule 56, decided not to submit any evidence in connection, really meaningful, admissible evidence on Prong 2, even though she had the full opportunity, one, to seek discovery, and two, to present evidence of allegations that she believes would have demonstrated either that the Prong 1 showing was wrong or that the Prong 2 showing would vichy her burden under Prong 2. Judge Rawson, can I ask him one more question? Well, I wanted to ask about attorney's fees, but you can finish up on this. The one thing I have, you've stated that you didn't cite Rule 56 in the motion, but I'm wondering, was there anywhere in the motion below where you said under the anti-SLAPP statute we have the right to either challenge the face of the complaint or the factual basis for the complaint? Yes, I believe we did. And we're doing the latter. I don't have the citation right now, but I know that we cited it because the whole point of it was we cited it to the fact that there was evidence, and it was permissible under 425. Forgive me, Judge Rawson, I don't have the page cited right now, but we can provide it. We did cite that. We did rely on it because the statute allows for it. Right, but I just want to make sure there's a statement in there saying we've chosen the second way. We're going the factual challenge way. My recollection is we very clearly articulated to the lower court that this is a factual challenge, not a legal challenge. Counsel, I wanted to ask you about the attorney's fees. Supposing counsel raised issues regarding the extent to which Judge Mahan actually delved into the block billing and the number of hours that was expended for what should have been a fairly routine matter, what's your response? And would you point me to Judge Mahan's ruling where he considered those objections and overruled them? So let me start with the block billing. We submitted a declaration from me making clear that there was no block billing, that what we did was we submitted fee charts because we didn't want to waive the privilege. I will see if I can find the specific citation, but Judge Mahan did address that. Let me deal with one issue specifically because this was raised. Well, before we move on, tell me in the record where we can go to confirm that Judge Mahan addressed the block billing objection. I will have to try and find it, Your Honor. I was just looking at this right a moment ago. I didn't see it, but, you know, perhaps I'm overlooking something. I don't have it with me. No, I said it. I provided a declaration, which you – Well, but I was – the question is whether or not the district court judge addressed that objection. Block billing is problematic. I was a district court judge before. No, I understand that. That's one of the primary objections that we have when attorneys lock together a number of tasks. No, I understand. Yeah, so that's why I'm curious where we can go to see that Judge Mahan actually considered that objection and resolved it. If you bear with me for a moment, I will see if I can find it. Forgive me. I literally was looking at this this morning. Well, assuming that Judge Mahan did not address that objection, should we remand it for that objection to be specifically addressed? Well, I don't think you need to because he's entitled to very broad discretion on this issue. And if he is – and if I submitted a declaration which made clear to him that no block billing prevailed – Well, but he didn't say that. That's the problem. No, I appreciate that. If he didn't say that, then we don't know that that's why he disregarded – overruled that objection. Fair enough. Counsel, did you ever submit in camera the unredacted billing records so that the judge had the basis for looking himself, not just beyond your declaration? I believe we offered to do so. I know you offered. I don't believe he took us up on that, but I believe we offered. So you had put in a declaration, we didn't block bill. You offered to submit the unredacted records, but the unredacted billing records were never submitted to the judge directly. And I think that just to answer your question, Judge Rawlinson, ultimately what Judge Mahan was charged with doing from our perspective is to determine whether the total number of hours billed was reasonable. And he clearly made that determination. Well, but for us to review that and determine whether or not there is an abuse of discretion, we generally need some explanation as to how he came to the decision he came to. And I also wanted to ask you about the number of hours expended. Where did he specify why those number of hours was sufficient? He did lay out in detail on that one. Let me see if I can find it. He specifically addressed... I think he said 7,000 pages of pleading. Just the 7,000 pages. I mean, in the second appeal, if you look, I believe it's volume one, pages 11 and 12. He goes to great lengths. I think it's 9, 10, 11, and 12. He goes through an analysis of why these hours were reasonable and the complexity of the case. Right. Including specifically the fact that you had a record that was not fulsome on the complaint. You had a complaint that was lacking in specifics. And for us, there was an enormous amount of work that was required to just frankly fill in the gaps and provide a narrative that made some sense. What's your response to opposing counsel's objection that it was overstaffed? There were multiple lawyers working on the same issue. I'm sure this is not... Anti-snap motions are not unknown. I mean, they occur fairly routinely. So his point was that because this is something that occurs fairly routinely, it wouldn't take five or six lawyers to work on this motion. But it wasn't five or six lawyers working full-time. I mean, it's not uncommon in a case. This is a $150 million lawsuit the plaintiff filed. This is a serious litigation. The records that were reflected, I think, show that my colleague, Ms. Baker, spent by far the most time. It wasn't as though we all spent exponential amounts of time on this motion. This was staffed appropriately for purposes of the amount that was claimed. It was staffed appropriately for the complexity of the case because it's not a simple case. To simply say we filed a simple complaint, which doesn't include any real factual evidence... Well, it's not a simple case, but it's not a complex case either. It was exceedingly complex. Why? Because there's an entire record in existence that speaks to facts that are not alleged in the complaint, a record which relates to a dispute between parties to which my client was not... The issues were not complex. Maybe the record was voluminous, but the issues were not complex. Well, one, I don't agree that the anti-SLAPP issues are not complicated. The anti-SLAPP statute is not a simple proposition. The interplay between Prom 1 and Prom 2 is not simple. There is an entire body of law in the state of California on anti-SLAPP. For an experienced attorney, though? For an experienced attorney, it still takes some time to go through the record and juxtapose that record because this was a factual challenge. Counsel, isn't the major basis of your claim here that there was no contact between my client and Dr. Wild before a particular date, that after that date it was protected, and so, Judge, all you have to make a determination of is, was she a lawyer or in contemplation of litigation, and when was their first contact? That's the ultimate issue, Judge Bennett, but in reaching that issue, we do have a Prom 1 burden, and so we were required to go through the documents, we were required to go through the record, and indeed, in discharging our Prom 1 burden, we cited two evidence that was elicited and taken in the other matter to which my client was not a party. So, yes, Judge Bennett, you are correct. The ultimate issue here is that facts in the record in this factual challenge are that the complaint, as framed in all its ephemeral vagaries, allege interference after my client became aware of this RSA through her relationship with Dr. Wild, and the evidence in the record unambiguously demonstrates the first time they could have even had a discussion about that was October 2016, which related to his retention of my client for legal services. But that doesn't change the fact that we have to go through to discharge our Prom 1 burden and review the record. This was not a small case. I mean, listen, I've never been sued for $150 million. We are listening. Don't tell us to listen. We're already listening. Oh, no, forgive me. I didn't mean any disrespect, Judge Rawlinson. I simply meant to suggest that if I ever got, and I wasn't directing it to you, if I ever got sued for $150 million, I would take the matter very seriously. My client took the matter very seriously. On a very sparse pleading record, we had to go back to determine what evidence was in existence for purposes of discharging our Prom 1 burden, and we did that, but that took a lot of time. And within the discretion that Judge Mahan had at his disposal, he made a determination those amounts were reasonable. I did want to very briefly say— You're way over your time, counsel, so if you could just wrap up. I just wanted to, on the issue of the rates, I just wanted to cite one thing from Judge Mahan's order. It's at two excerpts of the record, pages 10 and 11. He cites, the court finds that the hourly rates presented by defendant and her counsel are reasonable and appropriate. Counsel for defendant Robert Howler charges $6.75 per hour. Counsel Todd Lander charges $6.15. And then he goes through the other rates. We have the order, counsel. We have the order. Thank you. The plaintiff argues that the rate is too high for the local Las Vegas market, but this court has approved comparable rates in the past. We have the order, counsel. Thank you. Thank you very much. I appreciate your time. Thank you. Rebuttal. Let's start with three minutes. Start with three and see where we go. Thank you, Your Honor. I didn't really hear you. I've got hearing issues, but if you would repeat that, I would be happy. I'm sorry? I said let's start with three minutes. Okay. Thank you. First off, let me just touch on the rates because not only did Judge Mahan award these rates, which according to the case that they cited are at the upper range of the Nevada, but he also added a one-and-a-half time multiplier, so he increased those further. With respect to the Rule 12b-6 versus Rule 56, nowhere in the anti-slap motion was there any mention of a Rule 56 or a motion for summary judgment or anything of that nature that would put the plaintiff on notice that that's what the approach was. But they attached all of this documentation, and then you attached all of this evidentiary documentation, so obviously you thought evidence was okay because you submitted plenty of it. Well, on an anti-slap motion in California, which is where this started out, in Superior Court Orange, I was removed to district court in Southern California, and then Judge Carter took the attorneys out in the hallway and said, get this thing over to Nevada, which is where it ended up. There was no opportunity to do discovery during that time frame, but the evidence that was presented in response to the anti-slap went to the issue of Prong 2. I would submit that Prong 1 is really a legal challenge. Prong 2 is more of an evidentiary challenge. In the motion, it specifically says that the motion is predicated on the premise that Gunn cannot prove that Drage wasn't Wilde's attorney at all times. Now, with respect to the specific allegations of breach in California, where this case started, we incorporated by reference the RSA, the Release and Settlement Agreement, and pointed to that, and we incorporated it by reference in the complaint. We talked about the fact that there were three particular violations, the January failure to pay the $33.5 million, the March $20 million, and I believe the June, all of which were set forth in the RSA, which was part of the complaint under California pleading. The suggestion that this was insufficient is incorrect in the state of California. Right. One of the biggest problems I have sometimes is when cases get removed to federal court and the plaintiff's attorneys don't really understand that the procedures are different. Isn't that what happened here? When they came up with all this evidence, it sure looks like somebody on your side assumed, well, there's no discovery on this, so it must be a 12B6 context, not a Rule 56 context. Well, I think the mention of Rule 56 or a motion for summary judgment or summary adjudication was never made anywhere either in the motion, in the reply, in Judge Mahan's order. None of that was there. The opposing counsel says that he made a point to say that this was being decided on the factual basis, so you disagree with his recollection that that was part of their pleadings to the court? I do, Your Honor. There was no argument before Judge Mahan. The decision was reached on the papers. With respect to the papers themselves, the court can look at them and see page 3 of 26 of the motion for anti-SLAPP starting with page 21 and continuing on to page 4 down to line 12 sets forth exactly what the argument is. This is a motion to dismiss as a matter of law because Gunn can't prove that Drage wasn't Wiles' lawyer during this entire time frame. On that basis, there should have been a finding that Prong 1 was satisfied as to October 2016 or August 2016, but not before, and as such, if Prong 1 was not satisfied, we shouldn't have gone to Prong 2. Let's see what we have here. We did try to take discovery, and again, given the fact that this was removed to Judge Carter and then transferred to the district here, there was no opportunity to take discovery of Ms. Drage. There was no opportunity to subpoena Mr. Wild. He was visiting Newport Beach. We tried to catch him there, but we were rebuffed. We had no opportunity to flush out any of the issues that the defendant argues should have put us on notice that, oh, my gosh, this is a Rule 56 motion. Well, if it is, then say so. Or at some point in this entire proceeding, there should have been some evidence. Your position is it was so obvious because we put in all this evidence, and that's the standard we argued you should have known, and once you knew it was Rule 56, and I think it's Rule 56F that says if you don't have enough information to respond, you can ask for discovery, and you didn't ask. Well, except for one point, Your Honor. When the motion was filed, as I just said, the court will look at page 3 and page 4 where they frame the issue for the anti-slap motion. There was no effort made to describe this as a Rule 56 or anything of that nature. It was simply an attack on the complaint, failure to state facts on which a claim can be granted. But didn't at some point they propound discovery interrogatories? Wouldn't that have reflected that this was beyond a matter of law and into a factual realm? I believe that there were interrogatories propounded after the motion, the anti-slap motion was filed after it had been transferred. I don't recall the specific time, Your Honor. Okay, but in any event, once discovery was sent to your side, wouldn't that have triggered the notion that perhaps we're in Rule 56 land as opposed to 12B? Well, in California anti-slap jurisprudence, there is discovery, there is evidence. I mean, there's evidence submitted along with the motion. You can ask for discovery to oppose it. We did. We didn't have the opportunity to do it. I think, as you mentioned, the ruling was Dr. Wild is not available. We didn't ask for just Dr. Wild, but we did seek his deposition. Okay, doesn't the fact that you sought discovery from Dr. Wild also acknowledge that you recognize this was a Rule 56 type inquiry? No, no. On Prong 1, we sought his discovery because we wanted to prove that Ms. Drage was not his attorney in the time frame January of 2016 through August of 2016. That's where we focused all of our efforts because we felt the complaint had set forth these breaches pre-August of 2016, which should have entitled us to survive. And had we survived, we then could have done an additional discovery. We may have lost on summary judgment at some point down the road. We may have lost at trial. But the anti-slap ruling foreclosed that possibility, and I think that's where the court got it wrong. Well, let me ask you this. When you were told that Dr. Wild was unavailable, did you do a motion to compel? I don't know, Your Honor. I do know that he was deemed to be not subject to service of process in the United States because he resided in Switzerland. Was Switzerland the signatory to the Hague Convention? We could have, Your Honor, but this was fast track. There was no stopping this process. Once the anti-slap motion was filed, we filed our opposition, then this reply filed, and then the judge took it under submission, and that was it. There was no opportunity to prolong this to try to get discovery. For example, from the pilot... But did you bring it to the judge's attention that you were not permitted? Dr. Wild was a crucial witness in this case. Did you bring it to the court's attention that you were severely hampered in presenting your case without having Dr. Wild's deposition taken? I can't say with any certainty that we filed a motion to compel, but we asked the court to compel his testimony. I do know that there was discussion about the importance of Dr. Wild to this issue, to the Prong Law issue. We also sought to get further evidence from Ms. Grage, who had these conflicting declarations where she said, I was the attorney at all times. Her anti-slap motion says I was the attorney at all times, and therefore my conduct was protected. On that basis, the court found that it was a tribal issue of material fact as to this, I would say, as to Prong 1 from January until August, and as such, the motion should not... Even if it was treated by the court as a Rule 56 motion, that the court should have denied, should not have dismissed the complaint. The court should have struck the paragraphs that he felt were protected conduct. The problem is that they didn't seek striking just the paragraphs. They sought dismissing the entire complaint, and as I said, when they go for all, it's all or nothing. So I would respectfully request again the court reverse the judgment. If that's not the case, then I would ask that the court remand the attorney's fees issue to the district court for reevaluation and consideration of the arguments that we made at the lower court and a further explanation of the basis for the award. All right. Thank you. Thank you. Thank you to both counsel for your helpful arguments in this case. The case just argued is submitted for decision by the court that completes our calendar for today. We are in recess until 9 o'clock a.m. tomorrow morning. All rise.
judges: RAWLINSON, BENNETT, Cogan